UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

UNITED STATES OF AMERICA,                          Case No. 14-cv-394-PP

                Plaintiff,

v.

APPROXIMATELY $94,600 US CURRENCY,
ONE 2005 BENTLEY CONTINENTAL GT COUPE
      (VIN #SCBCR63W65CO29162),
ONE CUSTOM HAND-MADE 3-D DIAMOND SHIELD
      PENDANT BEARING INITIALS "HK,"
ONE LADIES' BREITLING CUSTOM BLACK MOTHER-
      OF-PEARL DIAMOND WATCH, and
ONE MEN'S 10-KARAT YELLOW GOLD DIAMOND
      BRACELET,

                Defendants.

TYRONE MCMILLIAN and
MILWAUKEE COUNTY CHILD SUPPORT ENFORCEMENT,

                Claimants.

---

**ORDER DENYING CLAIMANT'S MOTION TO COMPEL DISCLOSURES (DKT. NO. 34); DENYING CLAIMANT'S MOTION TO AMEND ANSWER (DKT. NO. 35); GRANTING GOVERNMENT'S MOTION TO STRIKE ANSWER, DISMISS THE CLAIM, AND GRANT DEFAULT JUDGMENT (DKT. NO. 38); DENYING THE VALIDITY OF CLAIM (DKT. NO. 43); GRANTING CLAIMANT'S MOTION FOR MORE TIME TO ANSWER INTERROGATORIES (DKT. NO. 48); DENYING CLAIMANT'S MOTION TO STRIKE INTERROGATORIES (DKT. NO. 51), DENYING CLAIMANT'S MOTION TO DISMISS (DKT. NO. 52)**

---

## INTRODUCTION

On April 7, 2014, the government commenced a civil *in rem* forfeiture

action against five defendant assets: approximately $94,600 in United States

Currency, a 2005 Bentley coupe, a custom diamond pendant, a custom

1

diamond watch, and a diamond bracelet. Dkt. No. 1. As of the date of this order, two claimants have appeared and stated interests in some or all of the properties: Milwaukee County Child Support Services and Tyrone McMillian. This decision and order addresses claimant McMillian's claim (Dkt. No. 43), answer (Dkt. No. 25), motion to compel disclosures (Dkt. No. 34), motion to amend his answer (Dkt. No. 35), motion for an extension of time to respond to special interrogatories (Dkt. No. 48), motion to strike special interrogatories (Dkt. No. 51), and motion to dismiss the complaint (Dkt. No. 52). In addition, the court addresses the government's motion to strike claimant McMillian's answer, to dismiss his claim, and for default judgment against four of the five defendant assets.

## I.     FACTS

On April 7, 2014, the United States filed a complaint for civil forfeiture *in rem*. Dkt. No. 1. The complaint sought *in rem* forfeiture of some $94,600 in cash, a 2005 Bentley, a 3-D diamond pendent with the initials "HK," a ladies' Breitling watch, and a men's yellow-gold diamond bracelet. Id. at 2-3. The complaint asserted that three parties had filed preliminary claims: Tyrone McMillian had filed a claim to all five properties; Ashley Knueppel had filed claims to the Bentley and the Breitling watch[1]; and Milwaukee County Child Support Services had filed a claim to the cash. Id. at 3-4.

_____

[1] The *in rem* complaint indicates that Ashley Knueppel filed claims on the car and the watch on January 13, 2014, and that McMillian filed claims on all five defendant properties on that same date. Knueppel never has filed a verified claim on the docket, and, as the court will discuss later in this opinion, McMillian did not file his verified claim until October 20, 2014.

2

The complaint alleges that all five properties were derived from proceeds of the crimes of interstate transportation of stolen property. Id. at 4. In addition, it alleged that the diamond pendent was derived from the proceeds of sex trafficking by force, fraud or coercion, and that the pendant, Breitling watch and bracelet were derived from the proceeds of money laundering. Id. at 4-5.

The affidavit in support of the complaint, submitted by Special Agent Matthew J. Rech, III of the Internal Revenue Service Criminal Investigation Division ("IRS-CI"), indicated that on July 6, 2011, Milwaukee Police officers arrested Tyrone McMillian at his home in Brown Deer, Wisconsin, and searched the home subject to a warrant. Dkt. No. 1-1 at 3. It was there that the officers found the five defendant properties, which they seized as evidence in a criminal investigation of McMillian for alleged child prostitution. Id. Ultimately, McMillian was indicted, tried and convicted of seven counts of sex trafficking and coercion, in violation of 18 U.S.C. §§1591, 1594 and 2422. United States v. McMillian, Case No. 11-CR-193 (E.D. Wis.). As agents were preparing to try that case, they learned that McMillian had purchased the defendant properties using proceeds obtained when he caused stolen property—namely, health care supplements from a company where a cooperating witness worked—to be transported in interstate commerce (from Texas to California, to be sold in Thailand), in violation of 18 U.S.C. §§1956 and 1957. Id. at 4.

The affidavit alleged that the investigation revealed that McMillian received $334,502.91 from the sale of the stolen supplements. Id. He withdrew

3

some of those proceeds as cash. Id. He transferred some to business accounts, then used the money to purchase the diamond "HK" pendant ($17,500), the Breitling watch (and another watch, for a total purchase price of $15,980), and the men's bracelet ($12,000). Id. The complaint indicated that when agents advised McMillian of his rights and then talked to him (in July of 2011), he admitted that he'd purchased the Bentley with cash, and registered it in the name of "Ashley Knueppel" in order to hide the fact that he owned the vehicle because he was subject to a child support lien. Id. at 5. McMillian claimed that the transfers of money into his business accounts came from people named "Rose" and "Danny," because they were investing in some of McMillian's businesses. Id.

A cooperating witness, who had been in an intimate relationship with McMillian, described how that witness had worked in a Texas lab, and had planned with McMillian to steal protein supplements from the lab and re-sell them. Id. at 5-6. They coordinated with another cooperating witness to sell the supplements to that witness. Id. at 6. The first cooperating witness used a forklift to remove the supplements, then loaded them onto rented trucks and shipped them from Texas to California, where they'd be shipped to the third witness in Thailand. Id. at 6-7. McMillian and the first witness were paid by wire transfer. Id. at 7. A second cooperating witness, the father of the third witness in Thailand, verified that the third witness purchased supplements from McMillian; the father wired the money to McMillian on five or six occasions. Id. at 7. The money was wired to the bank account of Tyrone

McMillian, although the second and third witnesses communicated with someone identifying himself as "Brian." Id. at 7-8. The investigation revealed that the contact telephone number the two Thai witnesses had was registered to Tyrone McMillian. Id. at 8 n.1. Rental truck and shipping company records confirmed the information provided by the two Thai cooperating witnesses. Id. at 9-10.

The investigation revealed that in January of 2011, McMillian had opened a checking account in his name at JPMorgan Chase Bank, and had signed the signature card. Id. at 10. The third Thai witness had an account at JPMorgan chase (and the witness' father had power of attorney over the account). Id. Eight wire transfers, totaling $334,502.91, went from the third witness' account to McMillian's account, starting on April 8, 2011. Id. Before that date, there was approximately $1,950 in the account. Id. at 11. Agent Rech confirmed that during the time period that the third cooperating witness wired funds to McMillian's account, only one other deposit went into McMillian's account—$1,439.76 deposited April 15, 2011, a check from an insurance company, listing a policy number. Id. at 11. Accordingly, "substantially all" of the withdrawals McMillian made from his account between April 8, 2011 and June 21, 2011 were traceable to the funds he received for the stolen supplements. Id. at 11-12. This included the $94,600 seized from McMillian when he was arrested—he had withdrawn $99,000 in cash from his account on June 21, 2011, two weeks before he was arrested. Id. at 12.

McMillian also withdrew $79,500 in cash from the account on June 13, 2011, which he used to purchase a cashier's check to pay for the defendant Bentley. Id. at 12. Agent Rech verified this with records from the Bentley dealer and from the JPMorgan account in McMillian's name. Id. at 13.

McMillian also transferred cash from his JPMorgan personal account to accounts in the name of "Flihigh Boy Clothing" and "Carpreciate," both at JPMorgan Chase. Id. at 14. These transfers took place between May 16 and June 14, 2011. Id. Only $700 in other deposits went into the Carpreciate account—$100 to open the account on April 13, 2011, and $600 on May 16, 2011. Id. at 15. The rest of the $40,000 deposited into that account came from wire transfers from McMillian's personal account; as indicated earlier, that account was funded by the proceeds from the sale of the supplements to the third cooperating witness. Id. Only $392.50 in other deposits went into the Flihigh Boy account—a $100 opening deposit on April 13, 2011 and a $292.50 deposit on April 27, 2011. Id. The remaining $16,687 that went into that account came from the wire transfers from McMillian's personal account, the proceeds of the supplement sales. Id.

Agent Rech obtained records from Pak's Jewelers, which demonstrated that McMillian purchased the "HK" pendant from that store. Id. at 16. McMillian did so using four different credit cards, for a total of $17,500 in charges. The first card (ending in #0507) was paid with funds from the Carpreciate account, the second card (ending in #0515) was paid with funds from the Flihigh Boy account, and the third card (ending #3521) was paid with

6

funds from McMillian's personal JPMorgan Chase account. Id. at 16-17. As discussed above, the funds in these accounts came from the sales of the protein supplements.

The fourth card (a TCF bank card ending in #6005) was linked to a joint TCF bank account held by McMillian and Ashley Knueppel. Id. at 16. Between April 8, 2011 and June 21, 2011, the TCF bank account was funded with cash withdrawn from McMillian's personal JPMorgan Chase account. Id. at 17. McMillian also provided some gold and diamonds to Pak's Jewelers to use in fashioning the pendant. Id. Agent Rech's affidavit indicates that the gold and diamonds came from two other pieces of jewelry McMillian had purchased from Pak's, during a time period (November 2007 through January 2009) when McMillian's only source of income was sex trafficking by force, fraud or coercion, and sex trafficking of children, in violation of 18 U.S.C. §§1591 and 2422(a) (offenses for which McMillian was convicted in case no. 11-CR-193). Id. at 18.

The records obtained from Pak's also demonstrated that McMillian purchased two custom Breitling watches from Pak's, including the defendant mother-of-pear diamond watch. Id. at 19. According to Agent Rech, McMillian purchased the watches through three credit card charges: one $10,000 charge, a second $5,000 charge, and a third $980 charge. Id. at 20. McMillian paid these credit charges using the proceeds of his interstate transportation of stolen property enterprise. Id. McMillian paid the $10,000 charge using his

Case 2:14-cv-00394-PP   Filed 09/09/15   Page 7 of 26   Document 61

Flihigh Boy account; he paid the $5,000 charge from his Carpreciate account; and he paid the $980 charge using his TCF bank account. Id.

McMillian also purchased the defendant gold diamond bracelet from Pak's. Id. at 21. He purchased the bracelet on June 6, 2011, using a credit card (ending in #3521) associated with his JPMorgan Chase Bank personal account to charge $3,000 and using a credit card (ending in #0507) associated with his Carpreciate account to charge $9,000. Id. The proceeds used to pay off these charges stem "almost entirely" from proceeds related to the interstate transportation offense. Id.

Agent Rech's records indicate that McMillian purchased the HK pendant, the Breitling watch, and the gold diamond bracelet with funds from money laundering transactions, in addition to the funds from the interstate transportation proceeds discussed above. Id. at 22. The bank records show that McMillian transferred proceeds from his personal account to the Carpreciate and Flihigh Boy accounts and that McMillian used those funds to purchase the jewelry items. Id. These transfers were McMillian's attempts "to conceal or disguise the nature and source of the proceeds." Id. This occurred in violation of 18 U.S.C. §1965(a)(1)(B)(i), §1956, and §1657.

## II. PROCEDURAL BACKGROUND

### A. Service of the Complaint

After the government filed the April 7 *in rem* complaint, dkt. no. 1, it filed a verification, in compliance with Rule C(2)(a) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, Dkt. No. 2, and

asked the court to issue *in rem* arrest warrants against the property. On April 10, 2014, the United States Marshals Service filed executed warrants for the $94,600 (Dkt. No. 3), the Bentley (Dkt. No. 4), the diamond pendant (Dkt. No. 5), the Breitling watch (Dkt. No. 6), and the diamond bracelet (Dkt. No. 7).

On April 10, 2014, the government served the complaint on Tyrone McMillian (Dkt. No. 10), Ashley Knueppel (Dkt. No. 11), Milwaukee County Child Support Services (Dkt. No. 12), and USPLabs (Dkt. No. 13). Under Rules G(4)(a) and G(5)(b) of the Supplemental Rules of Certain Admiralty and Maritime Claims, the known potential claimants had thirty-five days from receipt of the notice to file claims, and claimants "who did not receive direct notice of the filing" had until June 7, 2014 to file claims. Dkt. Nos. 9 and 10-13. Any party that filed a claim then had twenty-one days from the date of filing the claim to file an answer. <u>Id.</u> On May 12, 2014, Milwaukee County Child Support Enforcement filed a verified claim, Dkt. No. 19, and, on May 30, 2014, the claimant answered the complaint, Dkt. No. 21. Claimants Ashley Knueppel and USPLabs never filed verified claims or answered the complaint.

B.    <u>Claimant McMillian's Requests for Extensions of Time</u>

On April 21, 2014, claimant Tyrone McMillian filed a motion for extension of time to respond to the complaint, Dkt. No. 14; the government did not object to the request, Dkt. No. 15. The court granted the extension, and ordered the claimant to respond by June 15, 2014. Dkt. No. 16. On May 16, 2014, claimant McMillian requested an additional 120 days to respond to the complaint. Dkt. No. 20. On June 2, 2014, he requested a status update on his

9

second motion for an extension of time. Dkt. No. 22. The government responded to those pleadings, and suggested that the court give the claimant one additional month to file a claim—until July 15, 2014. Dkt. No. 23. On July 14, 2014, claimant McMillian filed a letter requesting a status update on the case (Dkt. No. 27), a third request for an extension of time (Dkt. No. 28), and a letter in support of that request, Dkt. No. 30. On July 16, 2014, the court (Judge Stadtmueller was the presiding judge at that time) denied both motions for extension of time. Dkt. No. 29. As a result, the deadline for the claimant to file a verified claim remained June 15, 2014, pursuant to Judge Stadtmueller's April 24, 2014 order. Dkt. No. 16.

On June 16, 2015, rather than filing a verified claim, claimant McMillian filed an answer to the complaint. Dkt. No. 25. On August 4, 2014, claimant McMillian filed a letter, indicating that he understood that Judge Stadtmueller had denied his motions to extend time to file his verified claim, but asking whether the judge had responded to his "more detailed letter," received by the court on July 15, 2014 (the deadline for filing the verified claim, and the day before Judge Stadtmueller denied the claimant's motion to extend that deadline). Dkt. No. 31. On August 25, 2014 and September 2, 2014, the claimant requested that the court provide an update on the status of the case. Dkt. No. 32 and 33. Ultimately, on October 20, 2014—four months after he filed his answer to the complaint, and four months after the deadline Judge Stadtmueller had set for the filing of the verified claim—the claimant filed a verified claim. Dkt. No. 43.

C.  Claimant McMillian's Motion to Compel and Motion to Amend

On September 12, 2014, claimant McMillian filed a motion to compel disclosures, Dkt. No. 34, and the government responded on October 3, 2014, Dkt. No. 36. On September 15, 2014, claimant McMillian filed a motion to amend his June 16, 2014 answer, Dkt. No. 35, and the government responded on October 6, 2014, Dkt. No. 37. On October 20, 2014, claimant McMillian replied. Dkt. No. 42.

D.  Government's Motions to Strike Answer, Dismiss Claims, and Obtain Default

On October 10, 2014, the government filed a combined motion and accompanying brief, seeking to strike claimant McMillian's answer, to dismiss his claims with prejudice, and to obtain an entry of default against four of the five assets. Dkt. Nos. 38 and 39. On October 20, 2014, claimant McMillian filed a verified answer, Dkt. No. 43, and on October 24, 2014, he filed a brief in opposition to the government's combined motion, Dkt. No. 44. On November 7, 2014, the government filed a reply brief. Dkt. No. 45. Claimant McMillian filed a second opposition brief on November 18, 2014. Dkt. No. 47.

E.  Claimant McMillian's Motions Regarding Interrogatories

On December 16, 2014, claimant McMillian filed a motion for an extension of time to respond to the government's special interrogatories. Dkt. No. 48. The government did not object to the request. Dkt. No. 49. On December 23, 2014, the claimant filed a motion to strike the government's interrogatories. Dkt. No. 51. Then, on December 29, 2014, the claimant filed a motion to dismiss the suit. Dkt. No. 52. On January 15, 2015, the government

11

responded to both motions. Dkt. No. 53. On February 2, 2015, the claimant replied to the government's response. Dkt. No. 56.

## III.   ANALYSIS

### A.   Claimant McMillian does not have standing to challenge the complaint, because he did not follow the procedural rules for civil *in rem* forfeiture actions.

"Since the earliest years of this Nation, Congress has authorized the Government to seek parallel *in rem* forfeiture actions and criminal prosecutions based upon the same underlying events." United States v. Usery, 518 U.S. 267, 274 (1996) (citations omitted). The Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions govern civil asset forfeiture cases. 18 U.S.C. §983(a)(4)(A). The "Supplemental Rules apply to forfeiture actions *in rem* arising from a federal statute." Fed. R. Civ. P. Supp. R. A(1)(B).

The government "commences a judicial forfeiture proceeding by filing a complaint as described in Rule C(2)." United States v. U.S. Currency in the Amount of $2,875.00, 754 F.2d 208, 212 (7th Cir. 1985) (citations omitted). Rule C(2) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions requires the complaint to "be verified," to "describe with reasonable particularity the property that is the subject of the action," and to "state that the property is within the district or will be within the district while the action is pending." In this case, the government has complied with this procedure. Dkt. Nos. 1-2.

Once the government files the complaint, "[t]he court must review the complaint." Fed. R. Civ. P. Supp. R. C(3)(a)(i). "If the conditions for an *in rem*

12

action appear to exist, the court must issue an order directing the clerk to issue a warrant for the arrest of the . . . property that is subject of the action." Id. The court then directs the clerk's office to issue a warrant, and the U.S. Marshals Service executes the warrants. Rule C(3)(b)(ii). On April 7, 2014, the clerk's office issued the warrants for arrest *in rem* of all five defendant assets, and, on April 10, 2014, the U.S. Marshals Service returned the executed warrants for each of the properties. Dkt. Nos. 3-7.

Next, "the plaintiff must promptly . . . give public notice of the action and arrest," and that "notice must specify the time under Rule C(6) to file a statement of interest in or right against the seized property and to answer." Rule C(4). "In an action *in rem*: a person who asserts a right of possession or any ownership interest in the property . . . must file a verified statement of right or interest: within 14 days after the execution of process, or within the time that the court allows." Rule C(6)(a)(i).

In this case, the government provided direct notice of the complaint to four potential claimants: Tyrone McMillian, Ashley Knueppel, Milwaukee County Child Support Services, and USPLabs. Dkt. Nos. 10-13. The direct notices advised the potential claimants to file a verified claim within thirty-five days of the date of the notice, and to file an answer within twenty-one days of filing the claim. Id. The government also provided notice by publication from April 8, 2014 through May 7, 2014. Dkt. No. 24-1. The general notice, posted on http://www.forfeiture.gov, included a description of the five defendant properties, directed potential claimants to file a verified claim "within 60 days

from the first day of publication," and directed them to file an answer "within 21 days" of filing the verified claim. Dkt. No. 24-1 at 2. As of the date of this order, only two potential claimants have filed verified claims and answers: Tyrone McMillian and Milwaukee County Child Support Services.

A claimant must follow the procedural rules in order to have standing to challenge the complaint. United States v. U.S. Currency in the Amount of $2,875.00, 754 F.2d 208, 212-13 (7th Cir. 1985). This includes properly verifying the claim and filing the claim and answer on time. Id. at 215. See also United States v. U.S. Currency in the Amount of $103,387.27, 863 F.2d 555, 559-61 (7th Cir. 1988). Once the potential claimant has notice and instructions of how to challenge the complaint, the court does not have "to take the additional step of reviewing all filings . . . in order to notify the claimant of any missing filings or any defects in its filings." $2,857, 754 F.2d at 215.

"To seek return of seized property, a claimant must prove an interest in it sufficient to establish standing. In the absence of standing there is no 'case or controversy.'" United States v. $7,000.00 in U.S. Currency, 583 F. Supp. 2d 725, 728-29 (M.D.N.C. 2008) (internal citations omitted). Standing in a civil forfeiture case comes "from two sources: statutes and Article III of the U.S. Constitution," and the "claimant must establish both." Id. at 729 (citations omitted). Because Tyrone McMillian cannot establish statutory standing, this decision focuses on that requirement and does not address constitutional standing. "A claimant establishes procedural standing by adhering to the procedural requirements outlined in the" Supplemental Rules. United States v.

14

$80,020.00 in U.S. Currency, 57 F. Supp. 3d 143, 147 (D.P.R. 2014) (citation omitted).

> 1. *Claimant McMillian did not file a timely claim, and therefore lacks standing to challenge the complaint.*

Despite his many filings, claimant McMillian has not followed the procedural rules, and thus does not have standing to challenge the complaint. First, he did not timely file a claim as required by the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions. The government sent claimant McMillian notice of the complaint on April 10, 2014. Dkt. No. 10. Paragraph 3 of the notice instructed the claimant that he must file a verified claim within 35 days of the date of the notice, or within such additional time as may be allowed by the court. Id. At the earliest, then, the verified claim was due by May 15, 2014. Even if the court had allowed an extra three days for mailing, the claim would have been due no later than May 19, 2014. On April 21, 2014, however, claimant McMillian timely filed a request for an extension of time to respond to the complaint, explaining that he was in transition and he had no access to documents or paperwork. Dkt. No. 14. On April 24, 2014, the court granted McMillian's request and ordered that he must file his verified claim by June 15, 2014. Dkt. No. 16.

On May 16, 2014, a month before the June 15, 2014 deadline, McMillian asked the court for a 120-day extension to file the verified claim. Dkt. No. 20. He argued that the one additional month's extension he'd been granted—from May 15 to June 15—was not sufficient. He indicated that he'd not been allowed to take any materials with him when he was transferred from one facility to

15

another, and that he needed time to have documents mailed to him, and to conduct research on laws and statutes. Id.

On July 15, 2014, the government responded that it had no objection to an additional one-month extension, through July 15, 2014. Dkt. No. 23. The court did not address the motion, and on July 14, 2014, claimant McMillian reiterated his need for a 120-day extension. Dkt. Nos. 28, 30. On July 16, 2014, the court denied any further extension of time beyond July 15, 2014 to file a claim. Dkt. No. 29. In his July 16, 2014 order, Judge Stadtmueller pointed out that the government's notice of April 10, 2014 clearly had indicated that McMillian needed to file a verified claim. Instead, he'd filed an answer to the complaint. The court also opined that McMillian's specified reasons for needing extensions of time were vague. For example, the court pointed out that in McMillian's July 14, 2014 letter, Dkt. No. 28, McMillian stated that "[m]ail is a problem here and anything is subject to happen here at any time, like prison lockdowns." Dkt. No. 29 at 2-3. Judge Stadtmueller did not find these reasons sufficient for granting a second extension of the deadline for filing a verified claim. Id.

Despite Judge Stadtmueller's order denying his requests for additional time, claimant McMillian did not file his claim until October 20, 2014. Dkt. No. 43. He filed that verified claim four months after the deadline Judge Stadtmueller had left in place. He appears to have, despite Judge Stadtmueller's ruling, assumed that he could have 120 days from June 15, 2014 to file his claim—although even then, 120 days from June 15, 2014

16

would have been October 13, 2014, a week before McMillian finally filed his verified claim.

Further, a review of the verified claim McMillian filed raises the question of why he needed an additional five months from the original claim deadline. The claim is two double-spaced pages long. Most of the first page is taken up with a listing the defendant properties. The remainder of the complaint asserts that McMillian is the person who bought the properties, and that he bought them with money from personal and business accounts. Dkt. No. 43. In contrast, the answer to the complaint—which he filed prematurely, on June 16, 2014—is a five-page document. Dkt. No. 25. Had he filed the two-page verified complaint on June 16, as Judge Stadtmueller had ordered, he would have been in compliance with the procedural rules and the court's order.

As noted above, in order to have standing to challenge a complaint in a civil *in rem* forfeiture action, the claimant must follow the procedural rules. Because claimant McMillian did not follow the rules or the court's orders, he does not have standing to challenge the complaint and the court will dismiss his claim.

> 2. *Claimant McMillian had not filed a claim when he filed his answer, and, therefore, did not have standing to challenge the complaint or to file an answer. As a result, the court will strike his answer and deny his motion to amend the answer.*

Claimant McMillian did not follow the procedural rules outlined in paragraph 3 of the notice of the complaint, Dkt. No. 10, when he filed his answer, Dkt. No. 25. Several circuits "have repeatedly emphasized that

forfeiture claimants must strictly adhere to the filing requirements to perfect standing." United States v. $487,825.000 in U.S. Currency, 484 F.3d 662, 665 (3d Cir. 2007) (collecting cases). The Seventh Circuit Court of Appeals has held, "Before a claimant in a forfeiture case can file an answer and defend on the merits, a claim must be filed. If no claim is filed, a putative claimant lacks standing." United States v. 8136 S. Dobson Street, Chicago, Ill., 125 F.3d 1076, 1082 (7th Cir. 1997) (internal quotation marks and citation omitted). "Absent a claim, the putative claimant is not a party to the action." Id.

Claimant McMillian filed his answer on June 16, 2014, Dkt. No. 25; he had not yet filed a claim at that time, and didn't do so for another four months. Accordingly, he was not a party to the case when he filed his answer, and did not have standing to file an answer or contest the claim. For that reason, the court will strike the June 16, 2014 answer as untimely, and will deny McMillian's September 15, 2014 motion to amend his answer. Dkt. No. 35.

> 3. *The court will deny claimant McMillian's motion to compel disclosures, because he does not have standing to bring the motion to compel, and because Fed. R. Civ. P. 26 does not apply to civil* in rem *forfeiture actions.*

On September 12, 2014, McMillian filed a motion to compel disclosures, in which he asked the court to require the government to make disclosures under Fed. R. Civ. P. 26(a). Dkt. No. 34. He requested that if the government did not provide the disclosure, the court impose sanctions under Fed. R. Civ. P. 37(a)(3)(A). Id. at 2. On October 3, 2014, the government responded and asked the court to deny the motion, because McMillian lacked standing to bring any

18

motions, and because Rule 26 does not apply in a civil *in rem* forfeiture action. Dkt. No. 36 at 1-2.

As the court already has determined above, McMillian had not filed a claim at the time he filed this motion, and thus did not have standing to challenge the complaint or bring the motion to compel. Further, although Rule 26(a) governs "required disclosures," and provides a list of items that parties generally must disclose in civil litigation, it specifically "exempt[s] from initial disclosure" any "forfeiture action *in rem* arising from a federal statute." Fed. R. Civ. P. 26(A)(1)(B)(ii). For these reasons, the court will deny McMillian's motion to compel disclosures.

> 4. *In order to bring a motion to dismiss a civil* in rem *forfeiture complaint, the movant must have standing. Claimant McMillian has not established standing to challenge this suit and the court will deny his motion to dismiss.*

On December 29, 2014, claimant McMillian filed a motion to dismiss the complaint for failure to prosecute. Dkt. No. 52. The motion alleged that while the government seized the defendant properties on July 6, 2011, the government did not file the forfeiture complaint until April 7, 2014—just under three years later. Id.

Rule G(8)(b)(i) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions governs motions to dismiss and states, "A claimant who establishes standing to contest a forfeiture may move to dismiss the action under Rule 12(b)(6)." As the court has held above, McMillian has no standing, because he did not follow the procedural rules for civil *in rem*

forfeiture actions in filing a claim. Without standing, he cannot bring a motion to dismiss, and thus the court will deny his motion.

Even if the claimant did have standing to file a motion to dismiss, however, McMillian's motion is without merit. McMillian challenges the fact that the government seized the property on July 6, 2011, but did not bring suit until April 7, 2014. Dkt. No. 52 at 2. Title 19 U.S.C. §1621 requires the government to bring a civil *in rem* forfeiture action "within 5 years after the time when the alleged offense was discovered, or in the case of forfeiture, within 2 years after the time when the involvement of the property in the alleged offense was discovered, whichever was later." See also United States v. 5443 Suffield Terrace, Skokie, Ill., 607 F.3d 504, 507 (7th Cir. 2010).

McMillian committed the money laundering and interstate transportation of stolen goods offenses in 2011, and the government connected those offenses to the defendant properties in 2013. Dkt. No. 1-1 at 5-7 and 11. The government filed the civil *in rem* forfeiture complaint in April of 2014, which falls within five years of when the government learned of the offenses and within one year of when the government connected the offenses to the defendant properties. The timing of the complaint falls within the statute of limitations, and the government has timely filed this action. There is no basis for dismissing the complaint, even if McMillian had standing to ask the court to do so.

5. *Because no claimant with standing has challenged the forfeiture on four of the five defendant properties, the court will enter default judgment as to the Bentley, the diamond pendant, the Breitling watch, and the diamond bracelet.*

The complaint names five defendant assets: approximately $94,600 in United States Currency, a 2005 Bentley, a diamond pendant, a Breitling watch, and a diamond bracelet. As of the date of this order, only one claimant, Milwaukee County Child Support Services, has filed a timely and procedurally proper claim, Dkt. No. 19, and answer, Dkt. No. 21. Milwaukee County Child Support Services asserts an interest in a portion of the $94,600, which it proposes to apply to the arrears, interest, costs and fees associated with McMillian's child support cases. Dkt. Nos. 19, 21. Because no other party has filed a timely or procedurally proper claim against the other four assets, the government has asked this court to enter default judgment against the Bentley, pendant, watch, and bracelet. Dkt. No. 38.

The government seeks forfeiture of these four items pursuant to 18 U.S.C. §981(a)(1)(C), which provides for forfeiture of property involved in money laundering and other monetary transactions in criminally derived property. Under the statute of limitations governing civil forfeitures, 19 U.S.C. §1621, the government has timely filed this action by filing it within five years of discovering the offenses and within two years of connecting the properties to the offenses.

The complaint alleges that the government seeks forfeiture based on McMillian's interstate transportation of stolen goods and his participation in sex trafficking. The verification affidavit of IRS Special Agent Matthew Rech

21

provides sufficient facts to support a *prima facie* case; in other words, had a claimant with standing filed a verified claim and answered the compliant, the government has demonstrated facts that indicate it could prove its case at trial. The government brought the action within the statute of limitations and has complied with the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions. Specifically, the government provided direct notice to McMillian, Ashley Knueppel, Milwaukee County Child Support Services, and USPLabs. Dkt. Nos. 10-13. It also effectuated indirect notice by publication to the public in general. Dkt. No. 24. Ashley Knueppel and USPLabs have failed to file a claim or to appear in this proceeding. Tyrone McMillian appeared, but has not complied with the Supplemental Rules or established standing, and the court will strike his claim. No valid claims have been filed against the Bentley, pendant, watch or bracelet. Accordingly, the court will grant the plaintiff's motion for default judgment pursuant to Fed. R. Civ. P. 55(b)(2).

B.    As a result of claimant McMillian's ongoing resentencing in the underlying criminal case, the court will deny, as moot, his motion for an extension of time to respond to the special interrogatories, it will construe his motion to strike the interrogatories as a motion to stay discovery in this proceeding, and it will stay discovery until the resentencing has concluded.

On November 19, 2013, McMillian filed a notice of appeal in the underlying criminal case, United States v. Tyrone McMillian, Case No. 11-CR-193 (E.D. Wis.), challenging the criminal judgment entered against him on November 7, 2013. On February 19, 2015, the Seventh Circuit Court of Appeals, Appeal No. 13-3577, affirmed the defendant's conviction, vacated his sentence, and remanded the case for re-sentencing. The sentencing court,

Judge Charles N. Clevert presiding, initially set the resentencing hearing for May 12, 2015, but reset the hearing to June 15, 2015 at the request of defense counsel. On June 3, 2015, defense counsel filed an unopposed motion to adjourn the June 15th resentencing hearing. Id. at Dkt. No. 161. On June 4, 2015, the court issued an order granting the motion and resetting the resentencing to July 27, 2015. The court held an initial resentencing hearing on July 27, 2015, dkt. no. 169, and continued the hearing to August 31, 2015 to allow the parties to discuss sentencing options. On August 21, 2015, the court reset the resentencing hearing to September 29, 2015 at 9:30 a.m.

On December 16, 2014, McMillian filed a motion for extension of time to respond to the government's special interrogatories, asking for an additional fifteen days. Dkt. No. 48. He indicates that he received a set of special interrogatories by mail on December 8, 2014. He notes that the postmark on the envelope was November 28, 2014—ten days earlier—and speculates that perhaps it took so long for the request to get to him because of the holidays. Id. He also notes that one of the things the government asked for in the special interrogatories was receipts/proofs of purchase for the defendant items, and reiterated the statements he made in other pleadings that he'd repeatedly asked for such documents from the sellers/retailers, with no success. Id.

On December 17, 2014, the government responded, confirming that on November 28, 2014, it had served special interrogatories on McMillian, pursuant to Supplemental Rule G(6). Dkt. No. 49. The government may issue special interrogatories pursuant to Fed. R. Civ. P. Supp. R. G(6)(a), which limits

the interrogatories "to the claimant's identity and relationship to the defendant property." United States v. Funds in the Amount of $574,840, 719 F.3d 648, 650 (7th Cir. 2013). These interrogatories "smoke out fraudulent claims—claims by persons who have no colorable claims." Id.

The government did not object to McMillian's request for additional time to respond, and suggested a deadline of January 6, 2015. Id. The court did not address this request, and on December 23, 2014, McMillian filed a motion to strike the special interrogatories. Dkt. No. 51. In his motion to strike, McMillian asserted that he had an ongoing appeal in the underlying criminal case, United States v. Tyrone McMillian, Case No. 11-CR-193 (E.D. Wis), and that answering the special interrogatories might violate his Fifth Amendment right against self-incrimination. Id. at 2-4.

On January 15, 2015, the government responded to the motion to strike. Dkt. No. 53. Although initially the government asked the court to deny the motion outright, it also noted that the court might construe the motion "as requesting a stay of this civil forfeiture case under 18 U.S.C. §981(g)(2)." Id. at 10. The government asserted "that such a motion would be well founded because one of the five defendant assets has a nexus to one of McMillian's two criminal cases . . . now on appeal." Id. at 11. The government also noted that if the "case were remanded for re-sentencing, any statements that McMillian made in response to the special interrogatories regarding the asset . . . could theoretically be used against him." Id. As a result, the government had no

24

objection to the court staying discovery until the "direct appeal . . . is resolved."

Id.

Title 18 U.S.C. §981(g)(2)(C) requires the court "[u]pon motion of a claimant," to "stay the civil forfeiture proceeding with respect to that claimant if the court determines that . . . continuation of the forfeiture proceeding will burden the right of the claimant against self-incrimination in the related investigation and case." It is "well-settled law" in the Seventh Circuit "that *pro se* complaints are to be liberally construed." Wilson v. Civil Town of Clayton, Ind., 839 F.2d 375, 378 (7th Cir. 1988). The court will, as the government suggested, construe McMillian's motion to strike interrogatories as a motion to stay discovery in the civil *in rem* forfeiture action until the conclusion of the re-sentencing hearing in his criminal case. The court will ask the government to notify the court when the resentencing concludes and when it believes that the underlying criminal case no longer burdens McMillian's right against self-incrimination. The court notes that this moots McMillian's request for additional time to respond to the special interrogatories. When and if the court lifts the stay on discovery, the court will set a new deadline for McMillian to respond to the special interrogatories.

**CONCLUSION**

The court **DENIES** Tyrone McMillian's motion to compel disclosures (Dkt. No. 34).

The court **STRIKES** Mr. McMillian's answer (Dkt. No. 25) and **DENIES** his motion to amend the answer (Dkt. No. 35).

Case 2:14-cv-00394-PP   Filed 09/09/15   Page 25 of 26   Document 61

The court **GRANTS** the government's motion to strike McMillian's claim (Dkt. No. 38) and **DISMISSES** McMillian's claim (Dkt. No. 43).

The court **DENIES AS MOOT** McMillian's motion for an extension of time to file responses to the government's special interrogatories (Dkt. No. 48). It construes the motion to strike the special interrogatories (Dkt. No. 51) as a motion to stay discovery, and **STAYS** discovery pending the resolution of the resentencing proceedings in <u>United States v. Tyrone McMillian</u>, Case No. 11-CR-193 (E.D. Wis.). The court **ORDERS** that the plaintiff file written notice with this court within fourteen (14) days of the conclusion of the re-sentencing in Case No. 11-CR-193, so that the court may schedule a deadline for McMillian to respond to the special interrogatories.

The court **DENIES** McMillian's motion to dismiss the suit (Dkt. No. 52).

Finally, the court **ENTERS DEFAULT**, and **GRANTS** the government's motion for default judgment, with regard to the 2005 Bentley Continental GT Coupe, the custom handmade 3D diamond shield pendant bearing initials "HK," the ladies' Breitling custom black mother-of-pearl diamond watch, and the men's 10-karat yellow gold diamond bracelet. The plaintiff shall submit a proposed order granting default judgment.

Dated in Milwaukee this 9th day of September, 2015.

BY THE COURT:

HON. PAMELA PEPPER
**United States District Judge**

26