UNITED STATES OF AMERICA,

        Plaintiff,

                                    Case No. 14-cv-394-pp

    v.

APPROXIMATELY $94,600 U.S. CURRENCY,
ONE 2005 BENTLEY CONTINENTAL GT COUPE
VIN SCBCR63W65C029162,
ONE CUSTOM HANDMADE 3-D DIAMOND
SHIELD PENDANT BEARING THE INITIALS HK,
ONE LADIES BREITLING CUSTOM BLACK
MOTHER-OF-PEARL DIAMOND WATCH,
and ONE MEN'S 10-KARAT YELLOW GOLD DIAMOND BRACELET,

        Defendants.

TYRONE MCMILLIAN, JR.,
and MILWAUKEE COUNTY CHILD SUPPORT ENFORCEMENT,

        Claimants.

---

**ORDER GRANTING GOVERNMENT'S MOTION TO STRIKE TYRONE MCMILLIAN'S MOTION TO VACATE FINAL JUDGMENT AND FINAL DEFAULT JUDGMENT UNDER F.R.C.P. 60(B)(2) (DKT. NO. 100), DENYING CLAIMANT MCMILLIAN'S MOTION TO STRIKE GOVERNMENT'S MOTION TO STRIKE MCMILLIAN'S MOTION TO VACATE FINAL JUDGMENT AND FINAL DEFAULT JUDGMENT UNDER F.R.C.P. 60(B)(2) (DKT. NO. 103) AND STRIKING CLAIMANT'S MOTION TO VACATE FINAL JUDGMENT AND FINAL DEFAULT JUDGMENT UNDER FRCP 60(B)(2) (DKT. NO. 99)**

---

On May 27, 2016, the court denied claimant McMillian's motion to vacate default judgment, approved the stipulation for compromise settlement with claimant Milwaukee County Child Support Services, granted the government's motion for judgment of forfeiture and default judgment and denied claimant

1

McMillian's motion to stay. Dkt. No. 77. On May 9, 2017, the Seventh Circuit affirmed this court's entry of default in favor of the government and denial of claimant McMillian's motion to reconsider. Dkt. No. 97. On September 29, 2020, claimant McMillian returned to this court and filed a "Motion to Vacate Final Judgment and Final Default Judgment Under FRCP 60(b)(2)." Dkt. No. 99. A month later, the government filed a motion to strike that motion. Dkt. No. 100. On November 17, 2020, claimant McMillian responded with a motion to strike the government's motion to strike. Dkt. No. 103.

This order grants the government's motion to strike the claimant's motion to vacate the judgment under Rule 60(b) and denies his motion to strike the government's motion to strike his motion to vacate the judgment.

## I.    Background

To address the pending motions, the court first must discuss two of the claimant's criminal cases. Case No. 11-cr-193 gave rise to this forfeiture action. The claimant cites the other case, Case No. 11-cr-281, in his motion to strike.

### A.    Prior Criminal Convictions in the Eastern District of Wisconsin

#### 1.    *Case No. 11-cr-193*

On August 12, 2011, Magistrate Judge Patricia Gorence signed a criminal complaint alleging three counts of sex trafficking of a child in violation of 18 U.S.C. §1591 against Tyrone McMillian. United States v. McMillian, Case No. 11-cr-193 (E.D. Wis.), Dkt. No. 1. The complaint asserted that on July 6, 2011, Milwaukee County Police Department officers arrested McMillian at his Brown Deer home; it stated that the officers searched the home under a state

2

search warrant. Id. at 16. Officers seized, "[a]mong other items," (1) $94,600 in cash, (2) a bank statement reflecting a balance of $99,955.76 in an account under McMillian's name, (3) a Bentley automobile and related sales contract, (4) a Mercedes Benz automobile, and (5) four pieces of jewelry. Id. at 16-17. According to the complaint, the officers also found two firearms, various firearm accessories, ammunition, electronics and a Lexus automobile. Id. at 17.

On October 18, 2011, the grand jury returned a superseding indictment; Count One charged McMillian with sex trafficking by use of force, fraud or coercion; Counts Two, Four and Seven charged him with sex trafficking of a child; Counts Three, Six and Eight charged McMillian with coercion and enticement; and Count Five charged him with attempted sex trafficking of a child. Dkt. No. 24 at 1-8. The superseding indictment also contained a forfeiture notice, which provided that

> [u]pon conviction of the offense of sex trafficking of a minor or through force, fraud, or coercion, in violation of Title 18, United States Code, Section 1591, as set forth in Counts One, Two, Four, Five, and Seven of the Superseding Indictment, the defendant shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 1594: (a) any property, real or personal, used or intended to be used to commit or to facilitate the commission of the offense; and (b) any property, real or personal, constituting or derived from, any proceeds obtained, directly or indirectly, as a result of the offense. The property to be forfeited includes, but is not limited to, the property identified as follows:
>
> a) a "Custom HK Diamond Pendant and Necklace" weighing approximately 77.4 grams with an approximate purchase price of $5,500;

b) a "Custom Pendant (State of WI) with Gold Chain and Diamonds" weighing approximately 115.7 grams with an approximate purchase price of $22,100;

c) a "Yellow Gold Watch with Diamonds" with an approximate purchase price of $5,298;

d) a "Yellow Gold Diamond 3-D Custom Piece 'BRN' Pendant & Necklace" with an approximate purchase price of $26,140; and

e) a "Custom Diamond Breitling Men's Watch" with an approximate purchase price of $15,900.

\* \* \* \*

If any of the property described above, as a result of any act or omission by a defendant: cannot be located upon the exercise of due diligence; has been transferred or sold to, or deposited with, a third person; has been placed beyond the jurisdiction of the Court; has been substantially diminished in value; or has been commingled with other property which cannot be subdivided without difficulty, the United States of America shall be entitled to forfeiture of substitute property, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c).

Id. at 9-10.

McMillian went to trial before a jury; district judge Charles N. Clevert, Jr. presided. Dkt. No. 84. On June 5, 2013, a jury returned guilty verdicts as to each count in the superseding indictment except Count Seven—one of the counts charging sex trafficking of a child. Dkt. No. 86 at 2. On November 6, 2013, Judge Clevert imposed a sentence of "360 months each as to counts 1, 2, 3, and 5 of the Superseding Indictment and 240 months each as to counts 4, 6, and 8 of the Superseding Indictment, with all counts to run concurrently for a **total term of 360 months imprisonment**." Dkt. No. 105 at 1.

4

McMillian appealed. Dkt. No. 111. Meanwhile, Judge Clevert issued the final order of forfeiture on February 19, 2014. Dkt. No. 133. On February 19, 2015, the Seventh Circuit affirmed McMillian's conviction but reversed and remanded for resentencing. Dkt. No. 156. On September 29, 2015, Judge Clevert re-sentenced McMillian to serve 180 months on each of the counts of conviction, to run concurrently with each other, for a total sentence of 180 months. Dkt. No. 172, 173. McMillian's counsel filed a letter with the court indicating that he did not plan to appeal. Dkt. No. 171.

On April 5, 2016, McMillian filed a motion to vacate, set aside or correct the sentence under 28 U.S.C. §2255. Dkt. No. 178; see also McMillian v. United States, Case No. 16-cv-417 (E.D. Wis.). That motion remains pending.

      2.    *Case No. 11-cr-281*

On December 6, 2011, the grand jury returned an indictment charging Tyrone McMillian with being a felon in possession of firearms and ammunition in violation of 18 U.S.C. §§922(g)(1) and 924(a)(2). United States v. McMillian, Case No. 11-cr-281 (E.D. Wis), Dkt. No. 1. The date of the crime alleged in this second indictment was July 6, 2011—the date Milwaukee Police officers searched McMillian's Brown Deer home. Id. at 1. This second criminal case was assigned to district judge Rudolph T. Randa. On June 27, 2013—three weeks after the trial in 11-cr-193, the case before Judge Clevert, concluded— McMillian filed a motion to adjourn the trial date and waive his right to a speedy trial; that same day, Judge Randa granted that motion through a text-only order. Dkt. No. 14. On November 19, 2013, Judge Randa scheduled a

hearing for December 2, 2013, at which he planned to discuss with the parties scheduling a jury trial date. Dkt. No. 15.

At the December 2, 2013 hearing, the parties agreed to a court trial on stipulated facts, with defense counsel noting that the only way for McMillian to preserve his appeal in the sex trafficking case before Judge Clevert would be to go to trial in the case before Judge Randa. Dkt. No. 16. Judge Randa scheduled the court trial for February 5, 2014 and required the parties to file stipulated facts by January 21, 2014. Id. On January 30, 2014, the parties filed the stipulated facts for that trial; they agreed that (1) in 2001 McMillian was convicted in Milwaukee County Circuit Court and Hennepin County, Minnesota state court of felonies that had not since been reversed, and (2) during the execution of a search warrant by the Milwaukee Police Department officers at McMillian's Brown Deer home on July 6, 2011, officers found gun cases, magazines, ammunition, guns and cash. Dkt. No. 17 at 1-3. On February 5, 2014, Judge Randa found McMillian guilty of Count One of the indictment. Dkt. No. 19 at 3. On March 6, 2014, he sentenced McMillian to serve seventy-seven months in custody consecutive to the sentence that Judge Clevert had imposed in Case No. 11-cr-193. Dkt. Nos. 22, 23.

McMillian appealed. Dkt. No. 25. On April 20, 2015, the Seventh Circuit affirmed the conviction and sentence. Dkt. No. 42.

On April 20, 2016, McMillian filed a motion to vacate, set aside or correct under 28 U.S.C. §2255 the sentence imposed by Judge Randa. Dkt. No. 43. He argued that his attorneys provided ineffective assistance of counsel when they

(1) "fail[ed] to challenge probable cause for his arrest," (2) "fail[ed] to raise the issue of the unlawful arrest" and (3) "advis[ed] him to have a stipulated bench trial rather than pursuing a conditional guilty plea." Dkt. No. 44 at 6. District judge Lynn Adelman granted the motion on March 30, 2020, finding that McMillian's trial attorneys "overlooked meritorious arguments for suppression."[1] Id. at 1. He concluded that "[c]ounsel provided ineffective assistance by failing to challenge the manner of and justification for petitioner's arrest." Id. at 8. Judge Adelman found that "[b]oth of these arguments would have been meritorious, and the record suggest[ed] no strategic reason why counsel did not raise them, in place of or in the alternative to the theories counsel did pursue." Id. Judge Adelman found that evidence known to McMillian's attorneys revealed that his arrest was unlawful and that the discovery of the firearms and ammunition underlying his conviction flowed from that arrest. Id. at 8, 10.

On September 9, 2020, the government moved to dismiss the indictment in Case No. 11-cr-281 based on Judge Adelman's decision. Dkt. No. 46. Judge Adelman granted the motion the next day. Dkt. No. 48.

B.    Civil Forfeiture Proceedings

On April 7, 2014, the government filed this case, a civil *in rem* forfeiture action, identifying as the defendant assets some $94,600 in cash, a 2005 Bentley, a 3-D diamond pendant with the initials "HK," a ladies' Breitling watch

---

[1] Judge Randa passed away in September 2016; McMillian's case was reassigned to Judge Adelman.

7

and a men's yellow-gold diamond bracelet. United States v. Approximately $94,600 U.S. Currency et al., Case No. 14-cv-394 (E.D. Wis.), Dkt. No. 1. The complaint named three individuals who had filed preliminary claims: Tyrone McMillian, Jr. filed a claim to all five properties, Ashley Knueppel (the person with whom McMillian had been living at the time the search warrant in the first criminal case was executed) filed claims to the Bentley and Breitling watch, and Milwaukee County Child Support Services filed a claim to the cash. Id. at 3-4. According to the forfeiture complaint, (1) all assets resulted from crimes of interstate transportation of stolen property; (2) the diamond pendant "was derived in part from proceeds traceable to an offense constituting a specified unlawful activity, namely, sex trafficking by force, fraud or coercion," and (3) the pendant, watch and bracelet derived from proceeds of money laundering. Id. at 4-5.

The affidavit supporting the complaint averred that Milwaukee County Police Officers recovered the defendant assets after arresting McMillian on July 6, 2011 at his Brown Deer home and executing a search warrant. Dkt. No. 1-1 at 3. It stated that in the course of preparing for trial in Case No. 11-cr-193 (the first criminal case), agents learned that McMillian had used proceeds derived from the transportation of stolen property in violation of 18 U.S.C. §§1956 and 1957 to purchase the defendant assets underlying this in rem action. Dkt. No. 1-1 at 4-5.

On April 10, 2014, the government served the complaint on claimant McMillian. Dkt. No. 10. The notice of the complaint indicated that

8

> [a]ny claimant of, in, or to the defendant properties must file a verified claim meeting the requirements of Rule G(5)(a) of the Supplemental Rules for Certain Admiralty and Maritime Claims with the Clerk of the United States District Court for the Eastern District of Wisconsin, 517 East Wisconsin Avenue, Room 362, Milwaukee, Wisconsin 53202 within thirty-five (35) days of the date of this notice, or within such additional time as may be allowed by the Court, and must serve an answer to the Complaint within twenty-one (21) days of filing the claim.

Id. at ¶3. On April 21, 2014, McMillian filed a motion for an extension of time to respond to the complaint. Dkt. No. 14. Without objection from the government, Magistrate Judge William Duffin granted the extension and ordered McMillian to respond by June 15, 2014. Dkt. No. 16. On May 16, 2014, McMillian requested a further extension of 120 days to respond to the complaint. Dkt. No. 20. The government responded that it had "no objection to an additional one-month extension"—that is, until July 15, 2014. Dkt. No. 23.

On May 12, 2014, Milwaukee County Child Support Services filed a verified claim asserting a partial interest in the approximately $94,600 in cash. Dkt. No. 19-1 at 2. On June 16, 2014, McMillian filed an answer to the complaint—not a verified claim. Dkt. No. 25. The government followed that with a July 2, 2014 letter advising McMillian that the deadline for filing a verified claim had passed and that if he did not file a verified claim by July 15, 2014 the government would move for entry of default, dkt. no. 26, and on July 14, 2014, the court received from McMillian another letter asking for an additional 120-day extension of time to file a claim, dkt. no. 28. The following day, the court received yet another letter asking for that same extension. Dkt. No. 30. On July 16, 2014, Judge J.P. Stadtmueller—who was presiding over the case

9

at the time—denied McMillian's motions for an extension of time beyond July 15, 2014. Dkt. No. 29.

On September 12, 2014, McMillian filed a motion to compel disclosures, asserting that he had not received any discovery and asking the court to sanction the government for failing to provide it. Dkt. No. 34. Three days later, the court received from McMillian a motion to amend his June 16, 2014 answer to the complaint. Dkt. No. 35. On October 10, 2014, the government filed a motion to strike McMillian's answer, to strike his potential claims to each of the five defendant assets and for default judgment as to the four assets for which no party had filed a claim. Dkt. Nos. 38, 39. On October 20, 2014, McMillian filed a verified claim asserting ownership of all the assets. Dkt. No. 43.

1. *September 9, 2015 Order (Dkt. No. 61)*

On December 29, 2014, the clerk reassigned the case to Judge Pepper. On September 9, 2015, Judge Pepper concluded that McMillian lacked standing to challenge the forfeiture complaint because he did not follow the procedural rules for civil *in rem* forfeiture actions. Dkt. No. 61 at 12. The court explained that (1) the government had provided direct notice of the complaint to McMillian, Milwaukee County Child Support Services and two other potential claimants; (2) those notices had directed the potential claimants to "file a verified claim within thirty-five days of the date of the notice, and to file an answer within twenty-one days of filing the claim;" (3) "[t]he government also provided notice by publication;" and (4) "[t]he general notice, posted on

10

http://www.forfeiture.gov, included a description of the five defendant properties, directed potential claimants to file a verified claim 'within 60 days from the first day of publication,' and directed them to file an answer 'within 21 days' of filing the verified claim." Id. at 13-14.

The court observed that (1) "[a] claimant must follow the procedural rules in order to have standing to challenge the complaint," id. at 14 (citing United States v. U.S. Currency in the Amount of $2,875.00, 754 F.2d 208, 212-13 (7th Cir. 1985)); and (2) "[t]his includes properly verifying the claim and filing the claim and answer on time," id. (citing United States v. U.S. Currency in the Amount of $103,387.27, 863 F.2d 555, 559-61 (7th Cir. 1988). It recounted, however that "[d]espite his many filings, claimant McMillian ha[d] not followed the procedural rules." Id. at 15. The court noted that "[d]espite Judge Stadtmueller's order denying his requests for additional time, claimant McMillian did not file his claim until October 20, 2014." Id. at 16. Instead, McMillian had filed a verified claim "four months after the deadline Judge Stadtmueller had left in place." Id. The court found that McMillian "appear[ed] to have, despite Judge Stadtmueller's ruling, assumed that he could have 120 days from June 15, 2014 to file his claim;" it stated that even if McMillian's assumption had been correct, "120 days from June 15, 2015 would have been October 13, 2014, a week before McMillian finally filed his verified claim." Id. at 16-17.

After concluding that McMillian lacked statutory standing to challenge the complaint, the court struck his June 16, 2014 answer as untimely and

denied his September 15, 2014 motion to amend his answer. Id. at 17-18. The court reasoned that because McMillian had not timely filed a verified claim at by the time he answered the complaint, "he was not a party to the case when he filed his answer, and did not have standing to file an answer or contest the claim." Id. at 18. For the same reason, the court denied McMillian's motion to compel disclosures and denied his motion to dismiss the complaint.[2] Id. at 18-20. Because the only timely verified claim was that of Milwaukee County Child Support Services against a portion of the $94,600, the court entered default judgment as to all other defendant assets. Id. at 21.

2. *May 27, 2016 Entry of Judgment and Denial of Stay*
   *(Dkt. No. 77)*

On September 28, 2015, McMillian filed a motion to vacate default judgment under Fed. R. Civ. P. 55(c) and 60(b). Dkt. No. 62. He argued that he repeatedly had asked for extensions of time and that he had misunderstood Fed. R. Civ. P. 12(a) to require him to file an answer; he assumed that if he did so, he would have shown a clear intent to state a claim to the assets. Id. at 1-2. The government opposed the motion, arguing that McMillian had not shown good cause for his default or quick action to correct it. Dkt. No. 64 at 2. The government argued that McMillian did not have good cause for the late filing of his verified claim, that he did not act quickly to cure the default (waiting ninety-six days after Judge Stadtmueller refused to extend the filing deadline

---

[2] Alternatively, the court found the motion to dismiss meritless. Id. at 20.

beyond July 15, 2014) and that McMillian never had asserted a meritorious defense to the forfeiture complaint. Id. at 4-5.

The same day the government filed its opposition to McMillian's motion to vacate, the government filed a stipulation for compromise settlement with claimant Milwaukee County Child Support Services, dkt. no. 63, a motion for judgment of forfeiture and default judgment as to the defendant $94,600, dkt. no. 66, and a proposed partial judgment of default and forfeiture as to the four non-currency defendant properties with an order extinguishing any ownership interest that claimant McMillian might have in the defendant $94,600, dkt. no. 65.

The court did not promptly rule on McMillian's motion to vacate, despite two letters from the government urging it to do so. Dkt. Nos. 68, 73. On April 21, 2016, claimant McMillian filed a motion to stay the forfeiture "until the conclusion of his Habeas Corpus petition." Dkt. No. 74. Presumably he was referring to the motion to vacate, set aside or correct sentence he had filed in the second criminal case, Case No. 11-cr-281.

On May 27, 2016, the court issued an order denying McMillian's motion to vacate, approving the government's stipulation for compromise settlement with claimant Milwaukee County Child Support Services, granting the government's motion for judgment of forfeiture and default judgment and denying claimant McMillian's motion for a stay. Dkt. No. 77. Noting that it had not yet entered a final judgment for default in the case, the court "analyze[d] the claimant's motion to vacate the judgment under Fed. R. Civ. P. 55(c) and

13

not under Rule 60(b)." <u>Id.</u> at 4. The court concluded that McMillian had not shown good cause for relief under Rule 55(c). <u>Id.</u> at 5-8. Noting that the claimant may have shown good cause for his own errors, the court found that he had not shown good cause for the court to vacate the default. <u>Id.</u> at 6. The court concluded that McMillian "lack[ed] a 'meritorious defense' to the government's complaint" because he lacked standing to challenge the forfeiture. <u>Id.</u> As the court explained, nothing in McMillian's arguments "remed[ied] his lack of standing to challenge the civil forfeiture case generally," and his "efforts [did] not correct his failure to follow the strict procedural requirements of civil forfeiture actions generally." <u>Id.</u> at 8. The court concluded that McMillian "[did] not satisfy the test for vacating an entry of default under Rule 55(c)" and denied the motion. <u>Id.</u> For the same reasons, the court denied his request for "the court to allow his timely claim, to allow the claimant's motion to amend the answer, and to strike the government's interrogatories." <u>Id.</u>

3. *May 9, 2017 Seventh Circuit Mandate (Dkt. No. 97)*

On July 14, 2016, McMillian appealed the court's order denying his motion to vacate, approving the government's stipulation for compromise settlement, granting the government's motion for judgment of forfeiture and entering default judgment. Dkt. No. 81. On May 9, 2017, the Seventh Circuit concluded that this court did not abuse its discretion and affirmed its decision. Dkt. No. 97 at 1-2. The appellate court noted that "McMillian [did] not dispute that he missed the deadline in Rule G(5) to file a verified claim' and timely filing

14

of a claim is needed to acquire standing to oppose forfeiture." Id. at 3 (citing United States v. Commodity Account No. 549 54930 at Saul Stone & Co., 219 F.3d 595, 597 (7th Cir. 2000)). It ruled that "[n]either McMillian's unsworn answer nor his requests for more time fulfilled the claim requirements of Rule G(5) for standing." Id. (citing U.S. Currency in the Amount of $2,857.00, 754 F.2d at 213; United States v. $23,000 in U.S. Currency, 356 F.3d 157, 163 (1st Cir. 2004)).

The Seventh Circuit also found that this court reasonably rejected McMillian's late claim. Id. The court reasoned that McMillian "gave no good reason for his delay" and "ignored the government's warning that if he did not file a verified claim by July 15 it would move for default," and it opined that "the extra time that he took was substantial." Id. The Seventh Circuit concluded that this court "reasonably refused to reconsider the dismissal of [McMillian's] untimely claim and the default;" it found that McMillian's "erroneous belief that he needed receipts and legal materials, which were not available to him while in transit, to file a claim . . . [did] not justify his untimely claim." Id. The court took note of McMillian's argument "that he delayed because he was waiting for the court to address his letter requests for more time;" it concluded, however, that "when [McMillian] wrote those letters, the district court had already decided that delays based on excuses contained in those letters would be 'inimical' to justice." Id. at 3-4.

## II.     Pending Motions and Briefing Relating to Judgment

### A.     Motion to Vacate Final Judgment and Final Default Judgment Under FRCP 60(b)(2) (Dkt. No. 99)

On September 29, 2020—three and a half years later, and six months after Judge Adelman granted McMillian's §2255 petition finding that McMillian's counsel in the second criminal case were ineffective—McMillian filed a motion to vacate this court's final forfeiture judgment and default under Fed. R. Civ. P. 60. Dkt. No. 99. Noting that Rule 60(b)(2) allowed a court to grant relief from a final order or judgment based on newly discovery evidence, McMillian argues that the government's civil forfeiture case relates to the "very same illegal arrest of McMillian and invalid and tainted search of McMillian's home" that formed the basis of Judge Adelman's decision to grant his §2255 motion to vacate his conviction in Case No. 11-cr-281. Id. at 2-3. He contends that "[t]hat arrest has now been ruled illegal and that search tainted due to the illegal arrest." Id. at 3. McMillian asserts that Judge Adelman's ruling constitutes newly discovered evidence sufficient for this court to vacate its prior judgment under Rule 60(b). Id. at 4, 5. He says that "[h]ad this evidence been known there clearly would have been a different result," and that "there is a great probability that there wouldn't have been a suit to begin with." Id. at 4. Relying on Judge Adelman's decision, McMillian concludes that "the forfeiture [] falls under the umbrella of the Fruit of the Poisonous tree doctrine and that deems this entire case as void." Id.

16

B. Government's Motion to Strike Tyrone McMillian's Motion to Vacate Final Judgment and Final Default Judgment Under F.R.C.P. 60(b)(2) (Dkt. No. 100)

On October 20, 2020, the government filed a motion to strike McMillian's motion to vacate the final judgment. Dkt. No. 100. The government asserts that "to be entitled to file a motion to vacate, or any type of motion in this long-closed case, McMillian must have had standing in this *in rem* civil forfeiture case in the first instance." Id. at 1. The government stresses that "McMillian failed to establish statutory standing in this case that the United States brought against defendant property items, while it was open, because McMillian failed to properly intervene as a claimant by filing a timely claim." Id.

The government asserts in its brief that if a potential claimant does not establish statutory standing, "[he] may not appear and [he] may not file any motions in the civil forfeiture case." Dkt. No. 101 at 10 (citing United States v. Vazquez-Alvarez, 760 F.3d 193, 197 (2d Cir. 2014)). The government recalls that in its September 9, 2015 order, this court "struck McMillian's claims and answer in this civil forfeiture case, with prejudice, as untimely because McMillian had failed to comply with the claim-filing deadlines set forth in the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions." Id. It reiterates the court's finding that because McMillian failed to follow those rules and the court's other orders, he lacked standing to challenge the complaint. Id. (citing dkt. no. 61 at 17). Stating that McMillian's lack of statutory standing rendered him unable to appear and file motions when the case was *open*, the government concludes that McMillian "remains a 'stranger'

17

to this long-closed case now." Id. The government argues that "just as he would have lacked standing to move to suppress evidence without filing a proper and timely claim when the case was still open, McMillian likewise lacks standing now to seek to vacate the judgment in this case and to reopen the case now." Id. at 10-11.

C. McMillian's Motion to Strike Government's Motion to Strike McMillian's Motion to Vacate Final Judgment and Final Default Judgment Under F.R.C.P. 60(b)(2) (Dkt. No. 103)

In his motion to strike the government's motion to strike his motion to vacate final judgment, McMillian argues that while the government has asserted that he does not have *statutory* standing, it does not acknowledge that he has *constitutional* standing. Dkt. No. 103 at 2. Addressing the requirements of constitutional standing, McMillian states that (1) "[t]he 'injury in fact' . . . is the illegally seized property perpetrated at the hands of the Milwaukee Police Department on July 6, 2011," (2) "'causation' has long been documented and has now been cemented by Judge Adelman's recent ruling that McMillian was illegally arrested on July 6, 2011 and the search of his home was/is invalid," and "[t]he latter being traced to this invalid forfeiture action," and (3) "'redressability' is the remedy that vacating the final judgment and default will bring." Id. at 3. McMillian argues that "when government comes into possession of evidence by circumventing or willfully disregarding limitations in search warrant, it must not be allowed to benefit from its own wrongdoing by retaining wrongfully obtained evidence or any fruits thereof." Id. (citing U.S. v. Comprehensive Drug Testing, Inc., 621 F.3d 1162 (9th Cir. 2010)). He

18

reiterates that "the District Court has ruled that McMillian was illegally arrested and the search invalid." Id. Stating that "[w]hat the government is proposing is that they have the power to disregard the U.S. Constitution in the face of clear evidence that the property in question was illegally seized," McMillian contends that this is "[a] clear violation of the Fourth Amendment." Id. at 4.

> D.  Government's Reply Brief in Support of Its Motion to Strike Tyrone McMillian's Motion to Vacate Final Judgment and Final Default Judgment Under F.R.C.P. 60(b)(2) (Dkt. No. 105)

The government reiterates that McMillian "is not and never has been a party to this case." Dkt. No. 105 at 1. According to the government, McMillian's argument "that he suffered 'injury in fact' is not enough to give him standing— and to become an intervenor—five years after the Court entered default judgment." Id. at 2. And, the government contends, "[a] person may not simply assert that he suffered 'injury in fact' from a seizure . . . to intervene as a claimant in a civil forfeiture case, even when that case is still open. Rather, to have standing to intervene as a claimant in a civil forfeiture case, a person must have *both* Article III standing as well as statutory standing." Id. Stating that statutory standing requires a claimant to "follow[] the rules for timely filing a proper claim in a civil forfeiture case," the government asserts that McMillian had "been given several opportunities to file a proper claim in this civil forfeiture case, McMillian failed to ever timely do so." Id. The government argues that "[b]y having failed to file a timely and valid claim, McMillian forever gave up the opportunity to intervene as a claimant in this case, regardless of

what injury he now claims to have suffered from the seizure or how he sees the circumstances surrounding the original seizure to have changed." Id. at 2-3.

E.    Analysis

In civil *in rem* forfeiture cases, the plaintiff is the United States and the defendants are the property. See, *e.g.* United States v. $196,969.00 U.S. Currency, 719 F.3d 644, 645 (7th Cir. 2013). A claimant in an *in rem* forfeiture case is not a defendant. Id. at 646. To intervene and contest a forfeiture, a potential claimant must establish (1) Article III standing, and (2) statutory standing. U.S. Currency, in the Amount of $103,387.27, 863 F.2d at 561 n.10. Statutory standing requires a claimant to comply with Rule G of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions. United States v. All Funds on Deposit with R.J. O'Brien & Assocs., 783 F.3d 607, 618 (7th Cir. 2015). The requirements of the Supplemental Rules "exist to 'force claimants to come forward as quickly as possible after the initiation of forfeiture proceedings, so that the court may hear all interested parties and resolve the dispute without delay, and to minimize the danger of false claims by requiring claims to be verified or solemnly affirmed.'" Id. (citing United States v. $8,221,877.16 in United States Currency, 330 F.3d 141, 150 n.9 (3d Cir. 2003)). "Supplemental Rule G(8)(c)(ii)(B) authorizes the government to move to strike a claim on the ground that the claimant 'can[not] carry the burden of establishing standing by a preponderance of the evidence.'" United States v. Funds in the Amount of $574,840, 719 F.3d 648, 652 (7th Cir. 2013).

In its September 9, 2015 order, this court ruled that McMillian lacked statutory standing. Dkt. No. 61 at 12. The Seventh Circuit affirmed that ruling. Dkt. No. 97 at 1-2. Judge Adelman's decision in McMillian's §2255 petition does not change the fact that McMillian does not have one of the two forms of standing required in a forfeiture case—statutory standing. The court will grant the government's motion to strike McMillian's motion to vacate the judgment. See Peak v. United States, 972 F.2d 352 (Table) (7th Cir. 1992) (affirming district court's decision to strike a motion for relief from judgment in a civil forfeiture action when the movant never filed a verified claim to assert an interest in the defendant property, and thus "was not a party to the action and had failed to show that his legal interest was affected by the judgment.").

Even if the court had denied the government's motion to strike, McMillian's motion to vacate the judgment under Rule 60(b) has no merit. Rule 60(b) allows a party to seek relief from an order for any of six enumerated reasons, including mistake, inadvertence, newly discovered evidence, fraud, or any other reason that justifies relief. Fed. R. Civ. P. 60(b).

McMillian contends that Judge Adelman's decision granting his §2255 motion constitutes newly discovered evidence warranting relief from this court's judgment. The court has reviewed Judge Adelman's decision granting claimant McMillian's §2255 motion. Case No. 11-cr-281 at Dkt. No. 44. Judge Adelman concluded that while there was evidence that on July 6, 2011, officers had arrested McMillian inside his house, McMillian's lawyers did not challenge the circumstances of his arrest. Id. at 11. He concluded that had defense

21

counsel successfully challenged the arrest, there would have been no reason for officers to go into the house to fetch McMillian's shoes (which is when they observed gun cases, leading to the search warrant). Id. at 12-13. Judge Adelman also found that there may have been no probable cause for the arrest, and that McMillian's counsel failed to raise this issue. Id. at 15-16. Finally, Judge Adelman concluded that counsel was ineffective in failing to argue that McMillian's girlfriend's consent was tainted. Id. at 17-19.

This court's ruling in the forfeiture case is based on McMillian's failure to follow the procedural rules for civil *in rem* forfeiture actions. The fact that Judge Adelman found that McMillian's criminal defense counsel were ineffective in the second criminal case (and thus vacated the judgment in that case and ordered the case reopened) does not change the fact that McMillian failed to follow the rules for *in rem* forfeiture actions. McMillian had notice of what those rules were—the April 10, 2014 notice the government served on McMillian stated that

> [a]ny claimant of, in, or to the defendant properties must file a verified claim meeting the requirements of Rule G(5)(a) of the Supplemental Rules for Certain Admiralty and Maritime Claims with the Clerk of the United States District Court for the Eastern District of Wisconsin, 517 East Wisconsin Avenue, Room 362, Milwaukee, Wisconsin 53202 within thirty-five (35) days of the date of this notice, or within such additional time as may be allowed by the Court, and must serve an answer to the Complaint within twenty-one (21) days of filing the claim.

Dkt. No. 10 at ¶3. Judge Duffin granted McMillian's motion for an extension and ordered him to respond by June 15, 2014. Dkt. No. 16. While McMillian filed subsequent requests for extensions, see dkt. nos. 20, 28, 30, Judge

Stadtmueller denied those requests for any extension "beyond July 15, 2014." Dkt. No. 29. Yet McMillian did not file a verified claim until October 20, 2014— more than three months after that deadline. As the court concluded in its September 9, 2014 order, McMillian therefore had no standing to challenge the complaint. Dkt. No. 61. That is why this court entered default judgment as to many of the defendant assets—because no party had timely filed a verified claim against them. Id. Even if Judge Adelman's decision granting McMillian's §2255 motion constituted newly discovered evidence under Rule 60(b), that evidence does not change McMillian's procedural errors and lack of standing to challenge the *forfeiture* complaint. Judge Adelman's decision to grant claimant McMillian's §2255 motion gives this court no basis to vacate its judgment under Rule 60(b). For the same reasons, McMillian's motion to strike the government's motion to strike his motion to vacate the judgment is without merit.

The court understands McMillian's thinking. Judge Adelman found that in the 11-cr-281 case, McMillian's lawyers were ineffective for failing to challenge the arrest that led to the search warrant that led to the recovery of the guns McMillian was charged in Case No. 11-cr-281 with unlawfully possessing. Judge Adelman's decision led the government to dismiss Case No. 11-cr-281. Because the same search led to the recovery of the assets that are the defendants in this *in rem* forfeiture case, McMillian reasons that the seizure of the assets must have been unlawful under the Fourth Amendment and therefore that—regardless of his compliance or lack of compliance with civil

23

forfeiture rules and procedures—the court must vacate the forfeiture judgment. But that is not the way forfeiture works. There are cases in which assets are forfeited but the people from whom they are taken are never charged with or convicted of a crime. The forfeiture case is filed, as the court has noted, against the *assets*, and a person claiming an interest in those assets still must follow the statutory procedures to demonstrate that he has a valid, lawful interest in those assets. McMillian did not do that in this case.

The court will grant the government's "Motion to Strike Tyrone McMillian's Motion to Vacate Final Judgment and Final Default Judgment Under F.R.C.P. 60(b)(2)." Dkt. No. 100. It will deny claimant McMillian's "Motion to Strike Government's Motion to Strike McMillian's Motion to Vacate Final Judgment and Final Default Judgment Under F.R.C.P. 60(b)(2)." Dkt. No. 103. It will strike McMillian's Motion to Vacate Final Judgment and Final Default Judgment Under FRCP 60(b)(2). Dkt. No. 99.

## III.    Conclusion

The court **GRANTS** the government's "Motion to Strike Tyrone McMillian's Motion to Vacate Final Judgment and Final Default Judgment Under F.R.C.P. 60(b)(2)." Dkt. No. 100.

The court **ORDERS** that McMillian's "Motion to Vacate Final Judgment and Final Default Judgment Under FRCP 60(b)(2)" is **STRICKEN**. Dkt. No. 99.

The court **DENIES** McMillian's "Motion to Strike Government's Motion to

Strike McMillian's Motion to Vacate Final Judgment and Final Default Judgment Under F.R.C.P. 60(b)(2)." Dkt. No. 103.

Dated in Milwaukee, Wisconsin this 28th day of September, 2021.

BY THE COURT:

**HON. PAMELA PEPPER**
**Chief United States District Judge**